IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DAVID G.**,

    Plaintiff,

v.

**NANCY A. BERRYHILL,** acting COMMISSIONER of Social Security,

    Defendant.

No. 3:18-cv-01217-HZ

OPINION & ORDER

Robyn M. Rebers
Robyn M. Rebers, LLC
Wilsonville, OR 97070

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Courtney Garcia
Social Security Administration
Office of the General Counsel

701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

David L. Gattuccio ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on October 2, 2014, alleging disability beginning on June 6, 2013. Tr. 19, 175. The Commissioner denied Plaintiff's application initially and upon reconsideration. Tr. 99, 114. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 127. In a decision dated July 6, 2017, the ALJ found Plaintiff not disabled. Tr. 19-35. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1; *see also* 20 C.F.R. § 422.210(a). Plaintiff seeks judicial review of that decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Plaintiff was born in December 1965 and was 47 years old on the alleged disability onset date. Tr. 34, 175. He alleges disability due to short-term memory loss, anoxic encephalopathy, PTSD, anxiety disorder and neck and back pain with tingling and numbness in arms and hands. Tr. 195. He has a high school education and has past work experience on a bridge crew, as a facilities manager, and as a facility supervisor. Tr. 196.

# SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual

functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled.

*Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S DECISION

The ALJ performed the sequential analysis. Tr. 19-35. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 6, 2013, the alleged onset date; additionally, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2019. Tr. 22. At step two, the ALJ found Plaintiff had the following severe impairments: borderline intellectual functioning with a mild neurocognitive disorder, depression, posttraumatic stress disorder (PTSD)/anxiety, and coronary artery disease status post myocardial infarction. *Id*. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the specific impairments listed in the regulations. Tr. 23.

The ALJ next determined Plaintiff's RFC and found he could perform light work with the following limitations: he can perform no more than frequent crawling, kneeling, stooping, or crouching, and no more than occasional balancing or climbing; he must avoid concentrated exposure to vibrations, loud noises, temperature extremes, fumes, dust, gases, poor ventilation, and other noxious odors; he needs to avoid working around unprotected heights, moving machinery, and similar hazards; and he is limited to simple, repetitive, routine tasks requiring no more than brief, superficial contact with co-workers and the general public. Tr. 25. At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work. Tr. 33.

At step five, the ALJ found Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including small products assembler, mail room sorter, and routing clerk. Tr. 34. The ALJ therefore concluded that Plaintiff was not disabled from June 6, 2013 through the date of the decision. Tr. 35.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id*. (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id*.; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

**DISCUSSION**

Plaintiff argues that the ALJ erred by (I) rejecting his testimony; (II) failing to incorporate all of his severe impairments at step two; (III) improperly evaluating the "other" medical source opinion of Margaret Shean; (IV) rejecting the lay witness testimony; and (V) formulating an incorrect RFC.

**I.     Credibility Determination**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, reject testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In his application, Plaintiff alleged disability due to short term memory loss, anoxic encephalopathy, PTSD, anxiety disorder, neck and back pain, and tingling and numb arms and hands from a massive heart attack he suffered on October 6, 2012. Tr. 26, 195, 385-86. Plaintiff reported suffering from episodes where he does not know where he is. Tr. 72. At the administrative hearing, Plaintiff alleged that he could not work primarily because he could not sit or stand for long, was forgetful, got lost, could not pay attention, and had trouble sleeping. Tr. 26, 52-53.

The ALJ rejected Plaintiff's testimony to the extent that it conflicted with the RFC. Tr. 30-31. First, the ALJ found that Plaintiff's testimony regarding his debilitating symptoms and limitations conflicted with his activities. *Id.* Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. Here, Plaintiff did not stop working because he could not perform full-time work; rather, he was let go from his job because he could no longer work 60 to 80 hours per week after his heart attack in 2012. Tr. 31, 344. Following his heart attack, Plaintiff returned to work in May 2013, and was doing "really good" with assistance. Tr. 27, 351. The record shows that after the alleged onset date Plaintiff regularly rode a bicycle, went to church at least twice a week, and socialized with friends and family. Tr. 30, 230, 233, 241. He reported power walking two or three times daily in February 2014. Tr. 312. Plaintiff was also extremely active in his church, leading Bible study at two different retirement centers, and preparing and giving sermons. Tr. 624, 690. Plaintiff rode his motorcycle regularly and, in 2016, lived and worked on a ranch in Montana. Tr. 737. On this record, it was reasonable for the ALJ to conclude that Plaintiff's self-reports of completely debilitating limitations were not consistent with his active life and work history following the alleged onset date. *See Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007)

(daily activities can form the basis of an adverse credibility determination when they conflict with a claimant's daily activities). The ALJ thus provided a clear and convincing reason for rejecting Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036.

Further, Plaintiff's continued work on a ranch in Montana after the alleged onset date provided another clear and convincing reason for the ALJ to reject Plaintiff's testimony. Tr. 31, 737. Plaintiff also reported that he was "close to getting a job" in December 2016. *Id.* Evidence that a claimant has intermittently worked part-time, even in jobs that were admittedly too taxing, supports a denial of benefits. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). Plaintiff's work history thus provided further support for the ALJ's credibility finding. *Drouin*, 966 F.2d at 1258.

The ALJ next found that Plaintiff's testimony was contradicted by objective medical evidence in the record. Tr. 30. An ALJ may reject testimony that is inconsistent with the medical evidence of record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ noted several unremarkable physical examinations in the record, as well as providers' observations of good functioning. *See* Tr. 27, 317, 341-42, 363-65, 573, 620-21, 756-57 (treatment note indicating intact motor strength, sensation, and coordination, and normal gait). Objective evidence in the medical record also contradicts Plaintiff's claims of severe mental or cognitive impairments; for example, at a neuropsychological examination in July, 2015, Plaintiff exhibited normal speech and euthymic affect, and intact comprehension and abstract ability. Tr. 663-73. His concentration and attention were intact, as were his judgment and reasoning. *Id.* It was reasonable for the ALJ to infer from this evidence that Plaintiff's limitations were not as debilitating as alleged in his testimony. *Carmickle*, 533 F.3d at 1161. In sum, the ALJ provided multiple clear and convincing reasons to support his adverse credibility finding.

## II. Step Two Findings

Plaintiff next argues that the ALJ should have found his carpal tunnel and degenerative disc disease to be severe at step two. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen*, 482 U.S. at 153–54. The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. § 404.1512. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). The ALJ is required to consider the combined effect of all the claimant's impairments on her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the ALJ determines that a claimant has a severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Where an ALJ fails to identify a severe impairment at step two, but nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ resolved step two in Plaintiff's favor, finding Plaintiff had the severe impairments of borderline intellectual functioning with a mild neurocognitive disorder, depression, posttraumatic stress disorder (PTSD)/anxiety, and coronary artery disease status post myocardial infarction. Tr. 22. The ALJ also reviewed evidence of carpal tunnel and degenerative disc disease, but found these impairments were not severe. Tr. 22-23. In support of this finding, the ALJ noted that Plaintiff did not report any significant symptoms related to his cervical spine and did not seek or require any related treatment, and Plaintiff's activities – such as working on a

ranch and riding a motorcycle - were not limited by cervical spine issues. Tr. 23, 30-31.

Regarding Plaintiff's carpal tunnel syndrome, the ALJ wrote:

> Nerve conduction studies performed in January 2015 showed evidence consistent with moderate left carpal tunnel syndrome, but no findings of neuropathy. Elbow and wrist braces were recommended. Subsequent records do not document additional reports of significant left upper extremity symptoms or treatment, and do not show that the condition resulted in more than mild limitations in the claimant's ability to perform work-related activities.

Tr. 23. The ALJ's step two findings were reasonable based on this record. *Lingenfelter*, 504 F.3d at 1035 (The reviewing court may not substitute its judgment for that of the Commissioner).[1]

### III. "Other" Medical Source Margaret Shean

Plaintiff next argues that the ALJ improperly evaluated the "other" medical source opinions of Margaret Shean, failing to incorporate her opinion into the RFC. Ms. Shean conducted a neuropsychological evaluation of Plaintiff in November 2015 and noted her diagnostic impressions of major vascular neurocognitive disorder, PTSD, and major depressive disorder, recurrent, without psychotic features. Tr. 766. She also evaluated Plaintiff's processing speed, noting "impaired visual attention and working memory, visual and verbal memory deficits and executive dysfunction. Tr. 765-66. She assessed extremely low motor functioning and processing speed. *Id.*

Here, although the ALJ did not address Ms. Shean's opinion directly, her examination findings did not report specific limitations in conflict with the credited medical evidence. *See Turner v. Comm'r*, 613 F.3d 1217, 1223 (9th Cir. 2010) (When an opinion does not prescribe any

---

[1] Further, any error of omission at step two was harmless, because, the ALJ found that Plaintiff could perform the jobs of mail room sorter and routing clerk, which require only frequent handling, reaching, and fingering consistent with the limitations associated with his carpal tunnel and cervical spine. There was no medical evidence that plaintiff had manipulative limitations that would prevent him from performing these jobs. Tr. 34. The ALJ's step two finding was free of harmful error.

specific limitations, the ALJ need not assume that the medical source intended to include such limitations). The ALJ evaluated other medical evidence of Plaintiff's response time, processing speed, and short-term memory issues in. Tr. 29-30. Specifically, the ALJ credited the opinion of Shawn Johnston, Ph.D., who addressed Plaintiff's intellectual functioning. The ALJ incorporated Dr. Johnston's opinion into the RFC by providing a limitation to simple, routine, repetitive work. Tr. 29, 32. The ALJ also considered the opinion of Bruce Stelmack, D.O., who performed a neurological consultation and assessed some difficulties with memory and concentration, as well as anxious affect and poor eye contact, which the ALJ incorporated into the RFC. Tr. 29-30. The ALJ's RFC included moderate limitations in concentrating, persisting, or maintaining pace, and in understanding, remembering, or applying information. Tr. 24-25. Because these limitations are arguably consistent with Ms. Shean's opinion, the ALJ properly "took into account those limitations for which there was record support." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In sum, the ALJ's failure to specifically address Ms. Shean's opinion was harmless because it was inconsequential to his ultimate nondisability determination. Because the ALJ incorporated Dr. Johnston's opinion regarding Plaintiff's cognitive limitations, his omission of Ms. Shean's opinion was not harmful error.[2] *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (omissions that are inconsequential to the ultimate nondisability analysis are harmless).

IV. **Lay Witness Testimony**

Plaintiff also argues that the ALJ erred in rejecting the lay testimony of Ibeth Reinisch and Joanne Gattuccio. "In determining whether a claimant is disabled, an ALJ must consider lay

---

[2] While Plaintiff argues on reply that Ms. Shean was the only provider to discuss Plaintiff's processing speed impairment, the ALJ discusses Dr. Johnston's specific findings regarding Plaintiff's response times and low intellectual functioning.

PAGE 12 – OPINION & ORDER

witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id*. Thus, an ALJ may not reject such testimony without comment. *Id*. In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d, 1114.

Ms. Reinisch was Plaintiff's case manager at Clackamas County Behavioral Health. Tr. 821. She wrote that Plaintiff exhibited poor stress tolerance, difficulty coping, and required reminders to attend appointments and complete tasks. *Id.* The ALJ did not give significant weight to Ms. Reinisch's statement because it did not provide specific information about Plaintiff's limitations. Tr. 29. However, the ALJ incorporated moderate limitations related to memory and thinking into the RFC, consistent with Ms. Reinisch's testimony.

The ALJ also found that medical records were "not entirely consistent" with Ms. Reinisch's testimony regarding Plaintiff's stress tolerance and coping. Tr. 32-33. Inconsistency with medical evidence is a germane reason for rejecting lay testimony. *Bayliss*, 427 F.3d at 1218. Here, the record shows Plaintiff was able to manage his stress with his daily activities, for example through prayer and riding his motorcycle. On this record, to the extent that the ALJ rejected Ms. Reinisch's testimony, he provided a sufficient germane reason. *Bayliss*, 427 F.3d at 1218.

Plaintiff's former wife Joanne Gattuccio completed a third-party function report in December 2014 regarding Plaintiff's symptoms and limitations. Tr. 237-44. She wrote that Plaintiff had short term memory loss and at times forgot where he was and did not recognize

people. Tr. 239-44. She stated that Plaintiff did not do well around a lot of noise or people and had very high anxiety that led to "getting lost" and failing to recognize others. Tr. 237. Ms. Gattuccio stated that Plaintiff had trouble remembering instructions and appointment times and did not do will with people he was not familiar with. Tr. 238-40. Plaintiff also had problems sleeping, often forgot to eat during the day, and could not handle the noise and chaos of busy public places. Tr. 239-44.

The ALJ gave partial weight to Ms. Gattuccio's lay testimony, but rejected it to the extent that it conflicted with evidence of Plaintiff's daily activities. Tr. 33. Conflict with evidence in the record as a whole is a germane reason to give less weight to a lay witness's testimony. *Bayliss*, 427 F.3d at 1218. Specifically, the ALJ rejected Ms. Gattuccio's testimony regarding Plaintiff's memory and concentration issues because it arguably conflicted with his ability to perform activities discussed such as working on a ranch, working as a pastor, and riding his motorcycle. The ALJ reasonably inferred from this evidence that Plaintiff did not require significant assistance in daily living activities, contrary to Ms. Gattuccio's testimony. On this record, the ALJ provided sufficient germane reason to reject Ms. Gattuccio's testimony in favor of evidence that indicated more moderate difficulties with memory and concentration. *Bayliss*, 427 F.3d at 1218. The ALJ's rejection of the lay testimony was not error.

V.     **The RFC**

Plaintiff argues, finally, that the RFC does not include all of Plaintiff's limitations. Specifically, Plaintiff argues that the RFC should have included more restrictive limitations consonant with his impaired manipulative skills, poor visual attention and memory, anxiety, low motor functioning and processing speed, and poor ability to adhere to a schedule.

The RFC is the maximum that a claimant can do despite his or her limitations. 20 C.F.R. § 404.145 (a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC. *Lingenfelter*, 504 F.3d at 1041; *Osenbrock v. Apfel,* 240 F.3d 1157, 1163–65 (9th Cir. 2001).

As discussed above, the ALJ properly weighed the medical evidence, lay testimony, and Plaintiff's subjective symptoms statements, providing legally sufficient reasons for rejecting Plaintiff's testimony as well as the lay testimony. The ALJ reasonably assessed the medical evidence and incorporated Plaintiff's credible functional limitations into the RFC. The ALJ's RFC formulation was supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 29th day of July, 2019.

_____
Marco Hernandez
United States District Judge